UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X
                        :

DONOVAN HOWARD,

                        :

                   Plaintiff,             05 Civ. 7488 (LAK) (DF)

                        :

        -against-              **REPORT AND**

                        :        **RECOMMENDATION**

MUNICIPAL CREDIT UNION, WILLIAM BIRNBACH,
RICHARD CASAMASSA, W. PORTER, T. SICILIANO,   :

                   Defendants.     :
-------------------------------------------------------------------------X

**TO THE HONORABLE LEWIS A. KAPLAN, U.S.D.J.:**

In this action, *pro se* plaintiff Donovan Howard ("Plaintiff") asserts that the Municipal

Credit Union (the "MCU"), William Birnbach, Richard Casamassa, W. Porter and T. Siciliano

(collectively, "Defendants")[1] violated his rights under the Fair Credit Reporting Act ("FCRA"),

15 U.S.C. 1681 et seq., and various state laws.  Currently before the Court is Defendants' motion

to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules

of Civil Procedure, or alternatively pursuant to Rules 8(a) and 10.

For the reasons discussed herein, I recommend that Defendants' motion to dismiss

Plaintiff's two FCRA claims be granted under Rule 12(b)(6), with leave to replead one of those

claims.  I further recommend that, if Plaintiff does not timely replead, then the Court convert its

decision to a dismissal with prejudice of both of Plaintiff's FCRA claims (as well as any state

---

[1] Plaintiff generally does not distinguish between actions allegedly taken by the MCU
and the various individual defendants in the Amended Complaint.  Rather, Plaintiff appears to
attribute most acts to defendants generally, whom he refers to as "D's."  (Similarly, throughout
his papers, Plaintiff refers to himself as "P.")

law claims pre-empted by the FCRA), and exercise its discretion to dismiss Plaintiff's remaining state law claims, without prejudice to Plaintiff's refiling those remaining claims in state court.

## BACKGROUND

### A.     Factual Background

Plaintiff's *pro se* Amended Complaint, as elucidated by his original Complaint,[2] appears to allege the following facts:

Plaintiff was a customer of the MCU, a financial institution with offices and a principal place of business at 22 Cortland Street, New York, NY 10007.  (*See* Amended Complaint, dated Mar. 9, 2006 ("Am. Compl.") (Dkt. 23), ¶ 2; *see also* Complaint, dated July 6, 2005 ("Compl.") (Dkt. 1) at 1.)  Plaintiff received certain financial services from the MCU, including a 60-month auto loan, which Plaintiff initiated on October 17, 2000.  (Compl. ¶ 11.)  The payments due on this loan were $337.46 per month, and, according to Plaintiff, he made over 40 payments to the MCU in the slightly higher amount of $350.00 per month.  (*Id.*)  At some point, Plaintiff also opened a "money market account" at the MCU, although, on March 8, 2002, he requested that it be closed.  (Am. Compl. at 7.)

After closing the MCU money market account, but while still making payments on the car loan, Plaintiff allegedly sought credit from other sources.  In October 2004, a credit

---

[2] The facts presented in the Amended Complaint are not organized in any discernable order (*e.g.,* chronological, by defendant, or by claim), but rather are presented in a repetitive, piecemeal fashion mixed with legal argument.  For purposes of this motion, therefore, the Court has supplemented its understanding of the facts by reading Plaintiff's allegations in light of his original Complaint, where the underlying facts are somewhat easier to ascertain.  Even so, the Court is not certain that it has fully understood Plaintiff's allegations; the above narrative represents the Court's best effort to construe Plaintiff's pleading liberally, and to piece together his various factual assertions in a coherent manner.

application made by Plaintiff was denied. (Compl. ¶ 10.) At that time, Plaintiff "inadvertently learned" that Defendants had reported false information concerning him to the three major credit reporting bureaus. (*Id*.) In particular, Plaintiff learned that, on December 10, 2003, Defendants had reported to a credit agency that he had "failed to render payment on his auto loan for July 2001." (Compl. ¶ 11.) According to Plaintiff, he provided the MCU with a copy of a cashed check from July of 2001, which conclusively demonstrated that he had in fact made the auto payment in question. (*Id*.) Plaintiff alleges, however, that, for over seven months, Defendants fraudulently asserted that his auto loan account was in arrears. (Am. Compl. at 9, 13.) Further, Plaintiff learned that Defendants had continued to charge him monthly fees on his money market account until March 31, 2004, even though he had requested on March 8, 2002 that the account be closed. (Am. Compl at 7.) Because of Defendants' error in failing to close the account and in continuing to charge him fees, Defendants incorrectly reported to the credit agencies that Plaintiff's money market account was in arrears for over two years. (*Id*.)

Plaintiff alleges that he requested that the MCU correct the allegedly false information with the three credit reporting bureaus. (Compl. ¶ 10.) In response, on October 18, 2004 and again on October 26, 2004, the MCU sent Plaintiff letters purportedly explaining that the errors had been corrected by certain "Universal Data Reports" sent from the MCU to the credit bureaus. (*Id*.; Am. Compl at 9.) Plaintiff, however, disputes that the errors were satisfactorily corrected. (Am. Compl at 4; Compl. ¶ 10.) According to Plaintiff, his credit rating went from an "A" rating of 710 to a "poor" rating of 520 as a result of the MCU's actions. (Compl. ¶ 10.) Consequently, Plaintiff alleges, his subsequent credit applications, including an application for a

so-called Sallie Mae loan, were denied (*id.* ¶ 21), and that he "was unable to complete his wedding arrangements for August 2005" (*id.* ¶ 18).

In addition, Plaintiff asserts that, in June of 2005, he learned that the MCU had billed him for a "collateral insurance policy" in connection with his auto loan, without telling him. (Compl. ¶ 15.) The MCU allegedly billed him for auto insurance coverage from April 15, 2004 to October 8, 2004, notwithstanding the fact that Plaintiff had his own auto insurance during that period and had never entered into any contract with the MCU for auto insurance. (Am. Compl. at 7.)

Lastly, Plaintiff claims that the MCU continued to charge him fees until July 2005, for a disability and life insurance policy that he cancelled in October 2004. (Am. Compl at 6-7.)

## B.    Procedural History

Plaintiff filed his original Complaint in this action on July 6, 2005. In that Complaint, Plaintiff claimed that the MCU violated the provisions of the FCRA. (*See* Compl. ¶¶ 4, 5.) Specifically, Plaintiff alleged that the MCU, as well as defendants W. Porter and T. Siciliano, reported false information about him to credit agencies and "failed in their duty to immediately correct and update the false, fraudulent, incorrect information in violation of . . . 15 U.S.C. 1681(s)-2(b)," rendering them liable both for acting "willfully" under 15 U.S.C. 1681(n)(a) and for acting "negligent[ly]" under 15 U.S.C. 1681(o).[3] (*Id.* at ¶ 5.)

In response to Plaintiff's Complaint, Defendants filed a motion to dismiss on October 17, 2005 (Dkt. 4), and Plaintiff cross-moved for summary judgment (Dkt. 9). The Court, however,

---

[3] Plaintiff also alleged that Defendants violated 18 U.S.C. 1001, by making a criminal false statement. (Compl., ¶ 19.)

held both the motion and cross-motion in abeyance when Plaintiff moved on March 13, 2006 for

leave to file an amended complaint (*see* Dkts. 18, 22).  While continuing to present this case as

arising under the FCRA, Plaintiff, through his Motion for Leave To Amend, also sought to plead

other new claims, including various claim arising under state law.  (*See* Motion for Leave to

Amend Complaint dated March 7, 2006 ("Mot. to Amend") (Dkt. 18) at 3.)[4]  In addition,

Plaintiff sought to add two new defendants:  William Birnbach and Richard Casamassa, both

employees of the MCU.  (*See id.*)

     After the Court informed Plaintiff of his right to amend the Complaint without leave of

Court, Plaintiff proceeded to file the Amended Complaint on April 3, 2006 (Dkt. 23), and the

Court denied the parties' prior motions as moot (Dkt. 28).  As filed, however, the Amended

Complaint was not in the form of a revised pleading.  Rather, it appears that Plaintiff simply re-

labeled his Motion for Leave To Amend, identifying it as an "Amended Complaint."  As a result,

the Amended Complaint more closely resembles a memorandum of law than a complaint; it

contains sections entitled "Discussion" and "Argument," and lacks numbered paragraphs or

concise factual averments.

---

[4] Specifically, Plaintiff's motion contained the following language under the heading "Cause(s) of Action": "The Fair Credit Reporting Act (FCRA) establishes federal jurisdiction for the Plaintiff's cause of action pursuant to 15 U.S.C. 1681 Section 617, violation of Article 175 of the New York Penal Law Title K- Offenses Involving Fraud, and Offenses Involving False Written Statements, and violations of the Penal Codes: 210.05 Perjury in the third degree, 210.10 Perjury in the second degree, 210.15 Perjury in the first degree, 210.20 Perjury; pleadings and proof where inconsistent statements involved.  General Obligations Law, & 5-701, Subd.1, Implied Covenant Of Good Faith & Fair Dealing UCC & 1-203, 2-103 & 1-106, common Law Breach of contract.  D's are in alleged violation of the FTC Law & Regulations.  Fraud, fraudulent or false credit reporting in violation of FRCP rule 41 for Obstruction of Justice. Racketeering, extortionate and fraudulent billings for economic gain, conspiracy to defraud." (Mot. to Amend at 3.)

On March 12, 2007, Defendants filed the instant motion to dismiss the Amended Complaint, arguing not only that it is defective as a matter of form, but also that, even liberally construed as an amended pleading, it should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction and failure to state a claim. In particular, Defendants argue that: (1) the Court lacks jurisdiction over this action because the Amended Complaint does not adequately plead any federal claim, and the amount in controversy is insufficient to enable the Court to exercise diversity jurisdiction; (2) the Amended Complaint fails to state a claim under the Fair Credit Reporting Act; (3) the Amended Complaint fails to state claims against the four individual defendants with adequate specificity; and (4) "[i]f Plaintiff's references to various statutes and theories are viewed as attempts to state claims, they are unavailing and fail." (*See* Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint, dated March 9, 2007 ("Def. Mem.") (Dkt. 44) at (i).) Defendants further argue that, if the Court declines to dismiss the Amended Complaint in its entirety, then it should order Plaintiff to prepare and serve a second amended complaint that complies with the pleading requirements of Rules 8(a) and 10 of the Federal Rules of Civil Procedure. (*See* Def. Mem. at 17.)

On January 9, 2008, several months after his opposition to Defendants' motion was due,[5] Plaintiff finally filed opposition papers. (*See* "Affidavit in Support of Plaintiff's Complaint and in Opposition to D's Information dated 4-13-07 & Charges of D's Violation of FRCP Rules 26,

---

[5] Defendants served and filed their motion to dismiss the Amended Complaint on March 9, 2007. Although Plaintiff's response was due on April 12, 2007, the Court granted his request for an extension of that deadline to May 29, 2007. (*See* Endorsed Letter, dated April 12, 2007 (Dkt. 47)).

33, 34, 41 and F. R. Evid. Rule 403," dated Dec. 31, 2007.) While titled an "Affidavit," Plaintiff's opposition more closely resembles a brief, in that it consists almost entirely of argument. Defendants argue that the Court should not accept Plaintiff's belated opposition, and that their motion should be treated as unopposed. (*See* Affidavit of Roger Goodnough, sworn on Jan. 8, 2008 (Dkt. 50)). Yet, notwithstanding the substantial lateness of Plaintiff's submission and its questionable form, the Court has considered it, given Plaintiff *pro se* status, the confusing nature of Plaintiff's Amended Complaint, and the strong policy disfavoring dismissal of *pro se* pleadings without affording them their strongest possible construction.

## DISCUSSION

## I.  FEDERAL QUESTION JURISDICTION

Defendants first argue on their motion that this action should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, an argument that the Court must address as a threshold matter, before considering whether Plaintiff's claims are subject to dismissal under Rule 12(b)(6) for failure to state a claim. *See Chambers v. Wright*, No. 05 Civ. 9915 (WHP), 2007 U.S. Dist. LEXIS 92729, at *4 (S.D.N.Y. Dec. 19, 2007) ("A court presented with a motion to dismiss under both Rules 12(b)(1) and 12(b)(6) must decide the 'jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction.'" (citing *Magee v. Nassau County Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998))); *Cement & Concrete Workers Dist. Council Welfare Fund v. Atlas Concrete Constr. Corp.*, No. 04 CV 0915 (CPS), 2007 U.S. Dist. LEXIS 9817 (S.D.N.Y. Feb. 13, 2007) (analyzing subject matter jurisdiction first, "since dismissal of an action for lack

of subject matter jurisdiction will render all other accompanying defenses and motions moot." (citation omitted)).

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) if the Court lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). On a motion to dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the Court has subject matter jurisdiction to adjudicate the pleaded claims. *See Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir. 1996).

Here, Plaintiff asserts that the Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), § 1332 (diversity jurisdiction) and § 1367 (supplemental jurisdiction). (*See* Am. Compl at 3.) Defendants, on the other hand, contend that (1) the Court does not have federal question jurisdiction because Plaintiff has failed to state a viable FCRA claim, (2) the Court does not have diversity jurisdiction over Plaintiff's state law claims because Plaintiff does not allege a sufficient amount in controversy, and (3) in the absence of original jurisdiction, the Court should decline to exercise supplemental jurisdiction. (*See* Def. Mem. at 4-5.)

On this issue, Plaintiff is correct that the Court has "federal question" jurisdiction over this action. Federal question jurisdiction exists when the action arises out of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. In this case, Plaintiff has explicitly claimed that the Defendants have violated his rights under the FCRA, a federal law, and, despite Defendants' argument to the contrary, "[i]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction."

*Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Whether the complaint states a cause of action on which relief could be granted is a question of law and . . . it must be decided after and not before the court has assumed jurisdiction over the controversy."); *see also The Fair v. Kohler Die and Specialty Co.*, 228 U.S. 22, 25 (1913) ("When the plaintiff bases his cause of action upon an act of Congress jurisdiction cannot be defeated by a plea denying the merits of this claim."); *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 701 (2d Cir. 2000) ("It is well settled that plaintiff's failure to state a federal claim upon which relief could be granted does not mean that federal question jurisdiction is lacking." (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998))).

In fact,

> [l]ittle is needed for a plaintiff to assert a claim sufficient to give the federal court jurisdiction. Where the complaint 'is so drawn as to seek recovery directly under the Constitution or laws of the United States,' *Bell v. Hood*, 327 U.S. 678, 681 (1946), the district court must entertain the suit unless the federal claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous,' *id.* at 682-83.

*Spencer v. Casavilla,* 903 F.2d 171, 173 (2d Cir. 1990); *see also Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 701 (2d Cir. 2000) ("Federal question jurisdiction exists whenever the complaint states a cause of action under federal law that is neither 'clearly . . . immaterial and made solely for the purpose of obtaining jurisdiction' nor 'wholly insubstantial and frivolous.' (quoting *Bell*, 327 U.S. at 682-83))). In this case, viewed in the context of his factual allegations, it cannot be said that Plaintiff's invocation of the FCRA is either clearly immaterial or wholly insubstantial and frivolous.

Under the circumstances, I recommend that the Court find that it has subject matter jurisdiction, and reject Defendant's motion for dismissal under Fed. R. Civ. P. 12(b)(1).

## II.     ADEQUACY OF PLAINTIFF'S FCRA CLAIM

Defendants also argue that Plaintiff's FCRA claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief may be granted. "After the question of subject matter jurisdiction has been resolved, a court proceeds to the merits question, that is, whether the plaintiff has stated a federal cause of action." *Spencer*, 903 F.2d at 173 (citing *Bell*, 327 U.S. at 682).

### A.     Rule 12(b)(6) Standards

A motion under Rule 12(b)(6) requires the Court to "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted); *accord Jaghory v. New York State Dep't of Ed.*, 131 F.3d 326, 329 (2d Cir. 1997). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991) (citation omitted). At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire*, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted). Rather, in order to withstand a motion to dismiss, a complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *see also Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) ("a complaint must allege facts that are not merely consistent

with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion."); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (a pleader is obliged "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.").

Where, as here, a plaintiff is proceeding *pro se*, the Court must construe the pleadings liberally, *Branham v. Meachum*, 77 F.3d 626, 628-29 (2d Cir. 1996), and "interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (a *pro se* party's pleadings must be liberally construed in his favor and are held to a less stringent standard than the pleadings drafted by lawyers). In addition, even when a motion to dismiss is unopposed, the Court must independently examine allegations in the complaint for legal sufficiency because "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000) ("If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal.").

### B.    The Fair Credit Reporting Act

The FCRA was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. 1681(b). A "consumer reporting agency" is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit

information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."  15 U.S.C. § 168la(f).  Under the FCRA, any person who willfully or negligently "fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer."  15 U.S.C. 1681n & o.  Yet while the FCRA provides that enforcement actions may be brought in federal district court, s*ee* 15 U.S.C. 1681p, only certain of its regulations can be enforced by individuals, while others can only be enforced by government agencies or officials, *see* 15 U.S.C. 1681s-2.

Although the primary function of the FCRA is to regulate the actions of credit reporting agencies, the FCRA also imposes obligations on parties (like the MCU) that furnish information to such agencies.  *See* 15 U.S.C. 1681s-2 (detailing the "Responsibilities of furnishers of information to consumer reporting agencies").  There are two subsections of Section 1681s-2 that have potential relevance to Plaintiffs' assertions that the MCU violated his rights under the FRCA – subsections 2(a) and 2(b):

Subsection 1681s-2(a) provides that a furnisher of information has a duty to report information accurately to credit reporting agencies, and also has an ongoing duty to update and correct the information that it reports.  These duties, however, are only enforceable by a government agency or official; no private right of action is available under this provision.  *See* 1681s-2(a); *Prakash v. Homecomings Fin.*, No 05-CV-2895 (JFB) (VVP), 2006 U.S. Dist. LEXIS 62911, at *5 (E.D.N.Y. Sept. 5, 2006) ("[T]he plain, unambiguous language of the statute limits the enforcement of this subsection to government agencies and officials." (citing *Redhead,* No. 01-CV-11475 (DLC), 2002 U.S. Dist. LEXIS 17780, at *12-13 ("There is no private cause

of action under Section 1681s-2(a), for the FCRA limits the enforcement of this subsection to government agencies and officials.") (collecting cases))).

Subsection 1681s-2(b) provides that, when a furnisher of information is notified by the consumer reporting agency that a consumer disputes the accuracy of the furnished information, the furnisher has an obligation to investigate and undertake certain other actions.[6] *See generally Redhead v. Winston & Winston, P.C.,* No. 01-CV-11475 (DLC), 2002 U.S. Dist. LEXIS 17780, at *10-12 (S.D.N.Y. Sept. 20, 2002) ("The category of duties in [1681s-2(a)] relates to the furnishers' duty to report accurate information and their ongoing duty to correct inaccurate information . . . . The category of duties in [1681s-2(b)] governs the funishers' duty once notice is received from a credit reporting agency that there is a dispute as to the completeness or accuracy of the information provided to that reporting agency.").  Unlike subsection 2(a), this provision has generally been held to afford the affected consumer a private right of action.  *See, e.g. Elmore v. North Fork Bancorporation, Inc.*, 325 F. Supp. 2d 336, 339 (S.D.N.Y. 2004)

---

[6] In particular, Section 1681s-2(b) provides that, after receiving notice pursuant to 15 U.S.C. 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall: "(A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2); (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under [this section], for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly – (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information."  15 U.S.C. 1681s-2(b).

("Although there is a division of authority, most courts to have considered the issue have concluded that consumers may pursue claims . . . with Section 1681s-2(b).").

## C.    Defects in Plaintiff's FCRA Claims

The Court agrees with Defendants that, based on the allegations in his Amended Complaint, Plaintiff has failed to state a claim under the FCRA. First, the main thrust of Plaintiff's allegations is that the MCU "proffered fraudulent information to the three major credit reporting agencies . . . causing an adverse affect [sic] on P's credit report rating." (Am. Compl at 7.) This would implicate the duty of accurate reporting, set out in subsection 1681-s2(a) of the FCRA, but, as noted above, that provision does not provide a private right of action, and thus Plaintiff cannot maintain a claim against Defendants under that provision.

As for a potential claim under subsection 1681-s2(b), while Plaintiff does allege that the MCU failed to take appropriate steps to correct the erroneous information it had purportedly furnished to the credit reporting agencies (*see* Compl. ¶ 10 ("D's failed to correct the information on P's credit report per P's letter of 10-18-04.")), he fails to allege that he ever notified the *credit reporting agencies* of any dispute regarding the accuracy of reported information, or that the *credit reporting agencies* ever then notified the MCU of any such dispute. Rather, Plaintiff alleges that, after he was denied credit by another lender, he informed the MCU *directly* of the purported errors in his credit reports. (*Id*.)

Yet "notice must be received by the furnisher of the information *from the consumer reporting agency* to trigger its duties under § 1681s-2(b)." *Prakash*, No 05-CV-2895 (JFB) (VVP), 2006 U.S. Dist. LEXIS 62911, at *9 (emphasis added). As *Prakash* points out, "under § 1681-2(b), [a] defendant ha[s] no duty to investigate the credit dispute unless defendant

received notice of the dispute from a consumer reporting agency." *Id.* (citing cases); *accord Kane v. Guar. Residential Lending, Inc.,* No. 04-CV-4847 (ERK), 2005 U.S. Dist. LEXIS 17052, at *12, (E.D.N.Y. May 9, 2005) ("[U]nless and until a furnisher of information receives notice from a credit reporting agency, no private right of action exists under section 1681s-2(b)."); *Fashakin v. Nextel Communs.,* No. 05 CV 3080 (SLT)(RER), 2006 U.S. Dist. LEXIS 45807, *17 (E.D.N.Y. July 5, 2006) (dismissing claim against defendant on ground that "nowhere in the pleadings does Plaintiff allege that Defendant . . . received notice from a credit reporting bureau of Plaintiff's complaint"); *Elmore v. N. Fork Bancorporation, Inc.*, 325 F. Supp. 2d 336, 341 (S.D.N.Y. 2004) ("The complaint fails to state a claim upon which relief may be granted because it fails to allege that the bank violated the duties imposed upon it after receiving notice of the existence of a dispute from a credit reporting agency."). As Plaintiff does not allege that the MCU was informed by a credit reporting agency that he disputed the information MCU allegedly provided, Plaintiff's pleaded claim under 15 U.S.C. 1681s-2(b) is deficient.

For these reasons, I recommend that Plaintiff's FCRA claims be dismissed under Fed. R. Civ. P. 12(b)(6), for failure to state a claim. I recommend, however, that the two FCRA claims that Plaintiff is presumably trying to assert be treated differently, in terms of whether they are dismissed with, or without, prejudice. Specifically, I recommend that Plaintiff's claim under 15 U.S.C. § 1681s-2(a) be dismissed with prejudice, as that subsection simply affords no private right of action, and any amendment would therefore be futile. On the other hand, I recommend that Plaintiff's claim under 15 U.S.C. § 1681s-2(b) be dismissed without prejudice to his filing a Second Amended Complaint, pleading all the necessary elements of a claim under that subsection. On the question of whether leave to amend should be granted, the Court notes that

Plaintiff is proceeding *pro se* in this action, and may not have understood the need to allege that the MCU had received notice of a dispute from the credit bureaus and failed to take required steps in response to that notice. Moreover, a dismissal without prejudice would be especially appropriate here, given that the Amended Complaint, as currently formulated, is difficult to understand. (*See* n.2, *supra; see also Branum v. Clark,* 927 F.2d 698, 705-06 (2d Cir. 1991) (where a *pro se* pleading contained "the seeds" of viable claims, complaint should not have been dismissed "without granting leave to amend at least once"); *see also Kane,* 2005 U.S. Dist. LEXIS 17052, at *12 (stating that, while plaintiff's complaint "le[ft] much to be desired," and was subject to dismissal for failure to allege that defendant ever received notice from a credit reporting agency, the court could not say that it was "so clearly deficient that amendment would necessarily be futile").)

## III. <u>PLAINTIFF'S STATE LAW CLAIMS</u>

Assuming Plaintiff's federal claims are dismissed as defective, there remains the question of his state claims. In addition to alleging violations under the FCRA, Plaintiff refers in his Amended Complaint to a variety of claims that would appear to arise under state law.[7] To the extent that these state law claims are based on the same conduct that underlies Plaintiff's FCRA claims, however, these claims would be completely preempted by the FCRA and equally subject to dismissal. Indeed, the FCRA expressly provides that a State may not impose its own

---

[7] Plaintiff also refers in the Amended Complaint to two other potential sources of federal law ("FTC Law & Regulation" and "FRCP Rule 41" (*see* Am. Compl. at 3)), but neither of these give rise to a federal claim in this case. Certainly, a citation to a procedural rule cannot, in itself, support a claim, and, as to Plaintiff's reference to the FTC (which the Court assumes may be a reference to the Federal Trade Commission), Plaintiff has set out no particular law or regulation that he claims Defendants violated.

requirements or prohibitions with respect to the subject matter regulated by 15 U.S.C 1861s-2, *i.e.,* "relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t; *see Kavicky v. Wash. Mut. Bank*, No. 3:06CV01812(AWT), 2007 U.S. Dist. LEXIS 33252, at *4 (D. Conn. May 5, 2007) ("The FCRA prevents the imposition of any 'requirement or prohibition . . . under the laws of any State' with respect to 'section 1681s-2 . . . relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . .'" (quoting 15 U.S.C. § 1681t(b)(1)(F))); *Kane v. Guar. Residential Lending, Inc.,* No. 04-CV-4847 (ERK), 2005 U.S. Dist. LEXIS 17052, at *22, (E.D.N.Y. May 9, 2005) ("[A]ny state law claim predicated on a furnisher providing inaccurate information after receiving notice of the dispute 'is completely preempted by § 1681t(b)(1)(F).'" (citation omitted)).

Plaintiff does, however, plead some state law claims that do not appear to be coextensive with his FCRA claims. At a minimum, Plaintiff alleges that the MCU billed him for an auto insurance policy that he did not accept and a life insurance policy that he cancelled, and that the MCU overcharged him for his auto loan. (*See* Am. Compl at 3.) Construing Plaintiff's Amended Complaint liberally, the Court interprets these allegations at least to assert claims of fraud and breach of contract.

### A.    Diversity Jurisdiction

Plaintiff argues that the Court has original jurisdiction over these state law claims because, even apart from the presence of any federal question, there is diversity of citizenship among the parties. Diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between . . . citizens of different

States." 28 U.S.C. § 1332(a). If Plaintiff is correct that the requirements of Section 1332(a) are satisfied in this case, then the Court may not dismiss – on jurisdictional grounds – his fraud and contract claims, or any other state law claims that he may be asserting that are not preempted by the FCRA. *See Shanaghan v. Cahill*, 58 F.3d 106, 110-11 (4th Cir. 1995) (Section 1332(a) provides "positive, mandatory jurisdiction in diversity cases.").

Although Plaintiff has not actually pleaded that the parties to this action are citizens of different States,[8] Defendants do not contest this. (*See* Def. Mem. at 6 ("there appears to be diversity of citizenship between plaintiff and the defendants").) Defendants do contend, however, that Plaintiff has not satisfied the "amount in controversy" requirement of 28 U.S.C. 1332. (*See* Def. Mem. at 6-7.) In order to satisfy this requirement, "[a] party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (citing *Moore v. Betit*, 511 F.2d 1004, 1006 (2d Cir. 1975). When there is a question as to whether a particular type of damages is available on an asserted state law claim, this Court looks to the law of the forum state. *See Nwanze v. Time, Inc.,* 125 Fed. Appx. 346, 348 n.1 (2d Cir. 2005) (citing *Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust Co.,* 375 F.3d 168, 178 n.23 (2d Cir. 2004)).

---

[8] "It is firmly established that diversity of citizenship 'should be distinctly and positively averred in the pleadings, or should appear with equal distinctness in other parts of the record.'" *Leveraged Leasing Admin. Corp. ex rel. Dweck v. Pacificorp Capital,* 87 F.3d 44, 47 (2d Cir. 1996) (quoting *Wolfe v. Hartford Life & Annuity Ins. Co.*, 148 U.S. 389, 389 (1893). A statement of the parties' residence is insufficient to establish their citizenship. *Id.; John Birch Soc'y v. National Broadcasting Co.*, 377 F.2d 194, 199 (2d Cir. 1967). Here, Plaintiff's Amended Complaint does not make the necessary factual averments. (*See, e.g.,* Am. Compl. at 4 (section entitled "The Parties").)

In considering whether a plaintiff has met his burden of satisfying the jurisdictional amount requirement, courts recognize "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Wolde-Meskel v. Vocational Instruction Project Community Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999) (citing *Tongkook*, 14 F.3d at 785-86 ("If the right of recovery is uncertain, the doubt should be resolved . . . in favor of the subjective good faith of the plaintiff.")). To overcome the presumption, the defendant must show "'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." *Scherer v. Equitable Life Assur. Soc'y, U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Wolde-Meskel,* 166 F.3d at 63).

Here, even construing the pleadings liberally to raise the strongest arguments that they suggest, Plaintiff's allegations do not show a reasonable probability that the amount in controversy on his remaining state law claims exceeds $75,000.[9] Based on his original Complaint, Plaintiff appears to claim that he was never credited for pre-payments of $501.60 that he made to his auto loan. (*See* Compl. ¶ 11.) He also appears to claim that he was improperly charged $756 for auto insurance, as well as 10 months of fees on a life insurance policy that he had never requested, and two years of fees on a money market account that he had cancelled.

---

[9] In his original Complaint, Plaintiff appeared to seek $150,000.00 in compensatory damages on his FCRA claims, as a result of his lost opportunities to obtain other credit, once Defendants supposedly caused his credit rating to fall by reporting erroneous information to the credit bureaus. (*See* Compl., ¶ 22.) In addition, in his Amended Complaint, Plaintiff demanded "monetary civil penalties of not more than $2,500 per violation" of the FCRA. (Am. Compl at 11.) As discussed above, however, Plaintiff's FCRA claims (and his pre-empted state claims) cannot stand as a matter of law. Thus, these claims, "to a legal certainty," do not entitle Plaintiff to damages. *See, e.g., Nwachukwu v. Chemical Bank,* No. 96 CV 5118 (KMW), 1997 U.S. Dist. LEXIS 11363, at *25 (S.D.N.Y. Aug. 6, 1997) (finding that the court lacked diversity jurisdiction where five claims were dismissed for failure to state a claim and the last remaining claim, by itself, did not satisfy the amount in controversy requirement).

(*See* Am. Compl at 6-7.)[10]  The aggregate of these sums, which – based on Plaintiffs' pleadings – represents the direct, out-of-pocket losses that he arguably suffered as a result of Defendants' alleged actions, appears to be well below $75,000.

In his Amended Complaint, Plaintiff does demand punitive damages of $3.525 million (Am. Compl. 13), but, "[i]n computing jurisdictional amount, a claim for punitive damages is to be given closer scrutiny . . . than a claim for actual damages," *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1034 n.1 (2d Cir. 1972) (citation omitted)).  The New York courts reject punitive damages claims where the plaintiff fails to allege facts sufficient to demonstrate a "very high threshold of moral culpability" on the defendant's part.  *Giblin v. Murphy*, 73 N.Y.2d 769, 772, 532 N.E.2d 1282, 536 N.Y.S.2d 54 (1988); *see also RKB Enters., Inc. v. Ernst & Young*, 182 A.D.2d 971, 973, 582 N.Y.S.2d 814 (3rd Dept.1992) (alleged conduct must rise to a "level of high moral culpability").  For ordinary fraud and contract claims, like those that Plaintiff appears to be asserting here, the necessary high threshold is not met.  *See, e.g., Fairman v. Hurley*, 373 F. Supp. 2d 227, 234 (W.D.N.Y. 2005) (rejecting punitive damages claim in fraud case, upon finding that "plaintiff has not alleged facts sufficient to demonstrate that defendant's conduct rose to the level of high moral culpability which must be reached to support a claim for punitive damages. . . . Nor does plaintiff's complaint allege a fraud aimed at the general public." (citations and punctuation omitted)); *Kook Hwan Cho v. Kalliagas*, No. 04 CV 3371 (NGG)

_____

[10] While Plaintiff does not specify the amount of these fees, the Court notes that letters that he attached to the Complaint, apparently from a manager and vice president at the MCU, each document a $15 late fee for his auto loan, as well as a $756 charge for auto insurance.  (*See* Letter from Richard A. Casamassa to Donovan Howard, dated October 26, 2004; Letter from William P. Birnbach to Donovan Howard, dated October 18, 2004.)  While the letters indicate that both the $15 fee and the $756 charge were refunded to Plaintiff, the Court accepts as true, for purposes of this motion, Plaintiff's allegations that these matters have not been resolved.

(SMG), 2006 U.S. Dist. LEXIS 59142, at *6 (E.D.N.Y. Aug. 22, 2006) (holding that, "[u]nder

New York law, punitive damages are not normally recoverable for ordinary breach of contract

claims because the purpose of such damages is to vindicate public rights, not to remedy private

wrongs." (citing *United States v. Merritt Meridian Constr. Corp.,* 95 F.3d 153, 160-61 (2d Cir.

1996))).[11]

As the Court concludes, "to a legal certainty," that the amount that is actually in

controversy with respect to Plaintiff's remaining state law claims does not exceed $75,000, the

Court further concludes that it does not have diversity jurisdiction over those claims, under

28 U.S.C. § 1332. *See Scherer*, 347 F.3d at 397 (2d Cir. 2003); *see also Tobin v. Algora Publ'g,

Inc.,* No. 07-163-B-W, 2007 U.S. Dist. LEXIS 81144, at *4 (D. Me. Oct. 26, 2007) (concluding

that where, under *Twombly*, the plaintiff had not shown that he had a plausible claim for punitive

damages under the governing state law, his punitive damages claim would necessarily fail, and,

with it, his ability to satisfy the $75,000 threshold for diversity jurisdiction), *Report and

Recommendation adopted by* 2007 U.S. Dist. LEXIS 84823 (Nov. 15, 2007).

---

[11] While Plaintiff asserts, at the very end of the Amended Complaint, that Defendants
"scheme and scam the minority community and minority patrons" (Am. Compl at 14), this type
of conclusory remark – made in the context of Plaintiff's "Prayer for Relief" and without any
supporting factual allegations – is insufficient to transform an otherwise private transaction
between Plaintiff and Defendants into the type of gross and wanton fraud against the general
public that might support a punitive damages claim. *See Topps Co. v. Cadbury S.A.I.C.,* 380 F.
Supp.2d 250, 262 (S.D.N.Y. 2005) ("For the purposes of identifying a public wrong, New York
law distinguishes between 'a gross and wanton fraud upon the public' and 'an isolated
transaction incident to an otherwise legitimate business.' The latter does not constitute conduct
aimed at the public generally . . . and, as a matter of law, . . . does not warrant punitive
damages.") (quoting *Walker v. Sheldon*, 10 N.Y.2d 401, 405, 179 N.E.2d 497, 223 N.Y.S.2d 488
(1961)).

### B.   Supplemental Jurisdiction

While the Court lacks original jurisdiction over Plaintiff's state law claims, and thus is not required to adjudicate them, the Court nonetheless has discretion to exercise supplemental jurisdiction over any state claims that may be considered pendent to a Plaintiff's federal FCRA claims, over which, as discussed above, the Court had original jurisdiction under 28 U.S.C. § 1331.[12]

Supplemental jurisdiction may be exercised, "in any civil action of which the district courts have original jurisdiction, . . . over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367.  It makes no difference if the Court dismisses the federal claim that gave it original jurisdiction; the Court still retains discretion to exercise supplemental jurisdiction over the remaining state law claims.   *See Da Silva v. Kinsho Int'l Corp.,* 229 F.3d 358, 364 (2d Cir. 2000) ("dismissal [of the federal claim] on the basis of Rule 12(b)(6) . . . left the District Court free to use its discretion to exercise supplemental jurisdiction over state law claims." (citing *Bleiler v. Cristwood Constr.*, 72 F.3d 13, 16 (2d Cir. 1995))).

Nonetheless, should this Court dismiss Plaintiff's FCRA claims, I would recommend that the Court decline to exercise supplemental jurisdiction over any remaining state law claims.  *See* 28 U.S.C. § 1367(c) ("district courts may decline to exercise supplemental jurisdiction over a

---

[12] This demonstrates the significance of the Court's construction of Defendants' challenge to Plaintiff's FCRA claims as a motion under Rule 12(b)(6), rather than under Rule 12(b)(1).  *See Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir. 1996) ("because we find that the dismissal . . . is properly construed as a dismissal for failure to state a claim upon which relief can be granted under [Rule] 12(b)(6) – rather than a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) – we affirm [the] exercise of supplemental jurisdiction.").

claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well"); *Sadallah v. City of Utica*, No. 03 Civ. 9055, 2004 U.S. App. LEXIS 18634, at *14 (2d Cir. Sept. 3, 2004) ("because plaintiffs no longer have any viable federal claim, any remaining state law claims belong in state, rather than federal, court.") (citing *Gibbs*, 383 U.S. at 726).

As I have recommended that the dismissal of Plaintiff's FCRA claim under subsection 1681s-2(b) be without prejudice to replead, I recommend that Plaintiff be given thirty (30) days to file a second amended complaint, pleading all of the necessary elements of a violation under that subsection, and that the Court hold in abeyance any decision to dismiss his state claims under *Gibbs*. If no second amended pleading is forthcoming within the 30 days, then I recommend that Plaintiff's current Amended Complaint be dismissed in its entirety. (*See* Conclusion, *infra*.)

## IV.  PLEADING REQUIREMENTS

Because dismissal of this action would be appropriate pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1367(c) for the reasons discussed above, the Court need not reach Defendants' alternative motions to dismiss Plaintiff's Amended Complaint for failure to plead with sufficient specificity as to the individual defendants, or for failure to comply with Fed. R. Civ. P. 8(a) and 10. Nevertheless, given that Plaintiff's Amended Complaint does not comply with the rules governing the proper form for a pleading, and given its confusing format and general absence of specific allegations against the individual defendants, I recommend that,

should the Court accept this recommendation and grant Plaintiff leave to file a second amended complaint, he be directed to comply with the applicable rules of pleading, as described below.

First, Fed. R. Civ. P. 8(a)(2) requires that the complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("the basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike." (citation omitted)). While Rule 8 does not prohibit "collective allegations" against multiple defendants, *see Clayton v. City of Middletown,* 237 F.R.D. 538, 540 (D. Conn. 2006) (where the complaint also addressed "directly and in detail" the actions of the defendant individually), it does require that the allegations be "sufficient to put each [d]efendant on notice of what they allegedly did or did not do," s*ee McCray v. City of New York,* No. 03 Civ. 9685 (DAB), 2007 U.S. Dist. LEXIS 90875, at *80 (S.D.N.Y. Dec. 11, 2007).

Second, Fed. R. Civ. P. 10(b) requires that the complaint be comprised of separately numbered paragraphs, each "limited as far as practicable to a statement of a single set of circumstances."

Finally, although Defendants do not rely on Rule 9(b) in their motion, the Court notes that, to the extent a plaintiff seeks to plead claims based on fraud or mistake, that rule requires that such allegations be pleaded with "greater particularity." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002); Fed. R. Civ. P. 9(b) ("All averments of fraud . . . shall be stated with particularity.").

As the Amended Complaint fails to comply with each of the above rules, I recommend that Plaintiff be instructed that any further pleading he may file in this action must conform with Rules 8(a), 9(b), and 10 of the Federal Rules of Civil Procedure. Specifically, any future pleading must be in the form of a "short and plain statement" of his factual allegations, in numbered paragraphs, with each paragraph limited to a single set of circumstances. Additionally, any future pleading should be sufficiently specific to give fair notice to each named defendant of the claims alleged against that particular defendant, especially with regard to any state law claims grounded in allegations of fraud or mistake. I further recommend that Plaintiff be directed to the *Pro Se* Office of the Court, should he need assistance understanding these pleading requirements.

## **CONCLUSION**

For the foregoing reasons, I hereby respectfully recommend that:

(1)     The Court dismiss Plaintiff's FCRA claim under 15 U.S.C. § 1681-s2(a) with prejudice, for failure to state a claim.

(2)     The Court also dismiss Plaintiff's FCRA claim under 15 U.S.C. § 1681s-2(b) for failure to state a claim, but without prejudice to replead within thirty (30) days of the Court's decision.

(3)     The Court direct Plaintiff to comply with the formal pleading requirements set forth in Rules 8(a), 9(b) and 10 of the Federal Rules of Civil Procedure, should he file any further pleadings in this Court.

In addition, I recommend that, should Plaintiff fail to file a second amended complaint within 30 days, then the Court convert its ruling to a dismissal with prejudice of Plaintiff's

FCRA claims (as well as any factually co-extensive state law claims, which would be pre-empted by the FCRA), and decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, thereby dismissing the Amended Complaint in its entirety, without prejudice to Plaintiff's refiling his remaining state claims in state court.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, United States Courthouse, 500 Pearl Street, Room 1310, New York, NY 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, NY 10007. Any requests for an extension of time for filing objections must be directed to Judge Kaplan. FAILURE TO OBJECT WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
   January 24, 2008

        Respectfully Submitted,

        DEBRA FREEMAN
        United States Magistrate Judge

Copies to:

Hon. Lewis A. Kaplan, U.S.D.J.

Mr. Donovan Howard
912 St. Dunstan Road
1st Floor
Baltimore, MD 21212

Roger A. Goodnough, Esq.
Torre, Lentz, Gamell, Gary and Rittmaster L.L.P.
100 Jericho Quadrangle
Jericho, NY 11753